(No. 87-CC-1139–)

SCOTT BLUMSTEIN, Administrator of the Estate of ROBERT W. BLUMSTEIN, M.D., Deceased, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 30, 1995.*

JULES R. CHERIE, LTD., for Claimant.

JIM RYAN, Attorney General (IAIN D. JOHNSTON, Assistant Attorney General, of counsel), for Respondent.

OPINION

EPSTEIN, J.

This is a claim for special damages arising out of the allegedly baseless suspension of the Claimant's decedent's medical license a decade ago in 1984. This claim was brought under section 17.12 of the former Medical Practice Act of 1923 (formerly Ill. Rev. Stat., ch. 111, par. 4451), which was reenacted as section 46 of the Medical Practice Act of 1987 (which replaced the 1923 Act, see P.A. 85-4) and which was codified at 225 ILCS 60/46. Jurisdiction of this Court is based on section 8(a) of the Court of Claims Act (705 ILCS 505/8) as liability is premised on the foregoing Illinois statute.

This statutory provision (225 ILCS 60/46) provided in 1984 and as reenacted provides now as follows:

"In the event that the Department's order of revocation, suspension, placing the licensee on probationary status, or other order of formal disciplinary action is without any reasonable basis in fact of any kind, then the State of Illinois shall be liable to the injured physician for those special damages they have suffered as a direct result of such order."

The Facts

In November of 1984 the Department of Registration and Education (the "Department," since renamed the Department of Professional Regulation) suspended the medical license of the Claimant's decedent, Dr. Robert W. Blumstein, who was constrained to suffer the 90-day suspension while he appealed it because Illinois law did not authorize a stay pending administrative review of the Department's order, *Blumstein v. Clayton* (1985), 139 Ill. App. 3d 611, 487 N.E.2d 1176 (1st Dist.)

A year after the fact, the circuit court (Judge David Shields, presiding) reversed Dr. Blumstein's suspension as against the manifest weight of the evidence in a 41-page opinion that reviewed in great detail and substantially rejected the four lay witnesses, the one expert witness and other evidence that the Department had arrayed against Dr. Blumstein and held that the Department had not carried its burden of proof "by clear and convincing evidence" as required by the statute. (*Blumstein v. Clayton*, No. 84 CH 10585, Judgment Order, November 25, 1985.) The Department did not appeal. A year later, Dr. Blumstein died.

His widow, Zaddie Blumstein, filed this claim in 1986 as administratrix of his estate. Claimant alleged that the Department's order was "without any reasonable basis in fact" (complaint, par. 13) and claimed damages of lost income and loss in value of decedent's medical practice totalling $1,000,000 as a "direct result of the * * * suspension." Complaint, pars. 11, 14.

In 1990, Zaddie Blumstein died. Scott Blumstein, the son of Dr. and Zaddie Blumstein, succeeded her as administrator and was eventually substituted as the Claimant in this cause.

## Procedural History of this Case

This case was placed on general continuance on October 5, 1987, pursuant to section 25 of our Act (705 ILCS 505/25) and section 790.60 of our Regulations (74 Ill. Adm. Reg. 790.60), on the Respondent's motion, due to Claimant's several lawsuits against other parties arising out of the decedent's suspension. The case was restored to active status in this Court in 1989.

In early 1990, the Claimant filed a motion for partial summary judgment as to liability. In that motion, the Claimant contended that the "obvious legislative purpose"

of the statute was "to provide redress to those physicians who had been wrongfully required to suffer the suspension * * * of their licenses * * *." (Claimant's motion for summary judgment, par. 7) and that the statutory standard of liability "encompasses the factual scenario of this case * * * the wrongful suspension of a physician's license against the manifest weight of the evidence adduced at the [departmental administrative] hearing" (*id.,* par. 8). After briefing, that motion was denied by a summary order entered May 4, 1993. (This opinion, *inter alia,* further explains the denial of that motion.)

On August 20, 1993, the State filed a motion to dismiss, contending (1) that the complaint failed to state a cause of action in that it failed to allege "facts" in support of its contention that the Department's order lacked a reasonable basis in fact, and (2) that the circuit court's opinion and judgment order establishes that there was in fact sufficient factual or evidentiary basis for the Department's suspension order to meet the statutory standard, and (3) that the action here should be dismissed under section 25 of our Act (705 ILCS 505/25), due to Claimant's failure to exhaust other potential remedies (*i.e.,* sources of possible recovery) in that she had not "pursued an action against the patients [of Dr. Blumstein]" whose complaints and testimony had led to the suspension and whom the decedent had accused of making 'false, frivolous and/or nonmeritorious complaints' to the Department."

Nominally, this case is before us on the Respondent's motion to dismiss, two aspects of which raise issues that are properly the subject of a motion to dismiss and should be decided first notwithstanding the unusual timing of this motion which the Claimant understandably protests.

However, after we dispose of the dismissal aspects of the State's motion, the Court will consider this case as on

cross-motions for partial summary judgment as to liability with respect to the third aspect of the current motion because (1) the Respondent's motion is properly a summary judgment motion insofar as it presents the circuit court opinion as undisputed evidence, as did Claimant's summary judgment motion, and (2) because both sides have presented this case for decision as to liability on the basis of the pleadings and the circuit court determination, and (3) because the thrust of both the Respondent's current motion and the Claimant's prior summary judgment motion is the legal issue of whether the circuit court proceedings demonstrate or fail to demonstrate breach of the statutory standard of liability under §17.12 of the former Medical Practice Act (reenacted as 225 ILCS 60/46) and (4) because neither party has even suggested that there are disputed material facts in this case or that evidentiary proceedings are required.

## The Motion to Dismiss

The Respondent's motion to dismiss must be denied. Respondent's pleading objection is more than adequately met by the simple reply that an allegation that "there is nothing" is sufficient to allege a complete absence of something required, at least as a matter of pleading. Here the Claimant alleged that the Department's suspension order was issued "without any reasonable basis in fact" (complaint par. 13), which is sufficient to allege an actionable statutory defect in the Department's proceedings. (Proving that allegation, of course, is a different matter.) Respondent has advanced no cogent answer to the Claimant's question of exactly what should, or might, be added to this allegation to make it sufficient. Paragraph 8 of this complaint sufficiently alleges a violation of former section 17.12 (now 225 ILCS 60/46).

Respondent's other dismissal argument must also be rejected. Although this Court is constrained by our statute to enforce the requirement that Claimants "exhaust all other remedies and sources of recovery" (705 ILCS 505/25) before recovering from the State—the "exhaustion doctrine" that is peculiar to claims against the State in this Court—we have never required claimants to pursue claims that existing law bars or fails to authorize as a precondition to litigating a claim here against the State of Illinois. Yet without a shred of authority, the Respondent argues that the decedent and his estate should have pursued actions against his complaining patients and witnesses. If a legal basis lies for that alternative recovery that the Respondent postulates, it has not been shown.

As the Claimant correctly points out, complainants and witnesses in quasi-judicial State proceedings, which includes professional license disciplinary proceedings such as those that are the subject of this case, are absolutely privileged. (See, *e.g.*, *Kalish v. Illinois Education Association* (1987), 157 Ill. App. 3d 969, 510 N.E.2d 1103; *Thomas V. Petrulis* (1984), 125 Ill. App. 3d 415, 465 N.E.2d 1059; *Parillo, Weiss & Moss v. Cashion* (1989), 181 Ill. App. 3d 920, 537 N.E.2d 851.) Neither our statute nor our rules nor our precedents impose an obligation on litigants to seek to change settled law in order to pursue to exhaustion alternative remedies that do not currently exist, as a matter of law, but which can be imagined by creative counsel or which might be created by future legislation or judicial decision. We decline to expand the exhaustion doctrine to encompass such speculative possibilities of causes of action. Indeed, doing so would in some instances place claimants and their counsel in an untenable posture given the constraints of Supreme Court Rule 137 and Federal Rule 11.

## Summary Judgment

This case presents this Court with a rare opportunity to review the standard of liability under section 46 of the Medical Practice Act of 1987 and its predecessor and its many companion provisions in other Illinois professional and occupational license statutes. Although this Court has had occasion to decide cases under these provisions (see, *e.g.*, *Andreoli v. Department of Professional Regulation* (1993), 93 CC 2227), there is a remarkable dearth of precedent almost two decades after these provisions were originally enacted by the General Assembly in 1975 (see Public Act 79-1130). (For convenience, this opinion refers to former section 17.12 of the Medical Practice Act of 1923, as amended, by its contemporary incarnation as section 46 of the Medical Practice Act of 1987, 225 ILCS 60/46.)

In this case, we revisit these provisions against the arguments (1) by the Claimant that section 46 should be expansively read in light of its "obvious legislative purpose" of providing relief to physicians whose licenses are wrongfully or incorrectly suspended or revoked, and (2) by the State that section 46 imposes the substantively identical standard as Supreme Court Rule 137 for pleadings, and therefore the test is whether the Department's charges were totally without supporting factual or evidentiary basis. We do not believe that either side is exactly right.

As we held by our earlier order denying the Claimant's summary judgment motion, it is clear that this statute does not provide relief to every medical licensee whose suspension (or other disciplinary order) is reversed by the courts. The standard of liability under this statute is plainly a higher standard than mere reversible error by the Department. We have not been appraised of any

showing of any legislative intent, obvious or not, that section 46 or its antecedent was intended to have the broad remedial effects that Claimant argues; our own research discloses none. The statutory language, which is the starting point and hopefully the dispositive point in any statutory construction analysis, plainly requires a far narrower reading and yields a much more limited liability than that for which the Claimant contends.

The operative words of the statute that define the standard of liability of the Department and hence of the State are: "without any reasonable basis in fact of any kind." (225 ILCS 60/46.) This is similar to the language of one part of Supreme Court Rule 137 (although the Rule 137 language is phrased in the affirmative, as a mandate), *i.e.*, the "well grounded in fact" language. However, it does not necessarily follow that the Rule 137 standard and the section 46 standards are identical as the Respondent contends.

There are at least four points of distinction from Rule 137 that should be noted for present purposes:

(1) The section 46 standard is concerned only with factual basis and not with legal basis (Supreme Court Rule 137 covers both).

(2) The section 46 standard has three extraordinary and arguably redundant words—"of any kind"— added to the articulated standard which at some point but not in this case must be construed and, if possible, given some meaning and effect.

(3) The section 46 standard of liability applies to the "*order* of formal discipline" that is issued or entered by the Department rather than to any pleadings that might initiate disciplinary proceedings.

(4) Violation of the section 46 standard of conduct by the Department gives rise to State liability well beyond attorney's fees and litigation expenses: this statute creates liability for consequential special damages which, as the damages request in this case shows, may be extensive.

We do not find it necessary to the decision of this case to review the Rule 137 caselaw to elucidate the standard for factually groundless pleadings that give rise to liability (primarily for attorney's fees) under that rule. The issue here is the factual basis that existed or failed to exist for the Department's 1984 order of suspension against the Claimant's decedent. The issue is not whether the Department was right, or whether its order meets the legal standards applicable to the discipline itself, as the Claimant contends. The issue is not the factual basis that supported or failed to support the Department's initial charges, as the Respondent at one point suggests. The issue is the factual basis for the Department's order. That much is plain.

It suffices for us to hold, as we do, that under section 46 and its predecessor, the Department was required to have some reasonable basis in fact to support its suspension order, and that this requirement entails both a basis in fact and one that is reasonable.

We recognize that this two-pronged standard is a stringent one that imposes a difficult hurdle for claimants that is akin, though not necessarily identical, to a probable cause standard or a Rule 137 pleading standard. However, the "reasonable basis in fact" standard is the standard that the General Assembly has written into law, and it can be altered by further legislation but not by this Court. We also recognize that this opinion does not address or resolve all of the potential legal issues concerning the

application of section 46 and its companions in the various Illinois licensing statutes that are not fairly presented by this case.

In this case, applying the section 46 standard, we must conclude that the Department had ample basis in fact, and a reasonable basis in fact, in the testimony of several of the decedent's patients and in the opinion of its own expert, a physician of considerable experience, to impose the 90-day suspension on the decedent. It is not necessary to review in detail the record of the Department's disciplinary hearing, as the sufficiency of the record to support the Department's order against the section 46 standard is clear.

It is neither appropriate nor necessary to consider the reasons that the Court later rejected the Department's case against the decedent; such review is not within the province of this court and, as indicated above, it is irrelevant whether or not the Department was ultimately correct or whether it ultimately prevailed against a different legal standard (i.e., the disciplinary standards of proof and of culpability). This court, in applying section 46's "reasonable basis" standard to the undisputed facts of this case, addresses only the *Department*'s factual basis for *its* order at the time that it entered its order. That basis sufficed to comply with the statute.

We appreciate that the decedent, and his widow and son, have pursued this cause all these years, at least in part, to vindicate his name and reputation. We understand that the decedent alleged and we assume he believed that the complaints against him were unfounded and malicious. However, there is no evidence whatever in the record that that was true. More importantly, there was not a shred of evidence produced that the Department knew that any of its evidence was untrue when it

entered its suspension order and there is no finding by the Court, nor any intimation, that any of the evidence was offered in less than good faith by the Department or by any of the witnesses. This case presents a situation where the record affirmatively shows that the Department acted reasonably on the facts presented to it and on the facts determined by it and on the conclusions reached by its expert, although its case turned out collectively to be legally insufficient to suspend the decedent's license. That insufficiency, however, is not enough to result in liability under section 17.12 of the (former) Medical Practice Act or its contemporary statutory companions. This Court is constrained to reject this claim.

## Conclusion

For the foregoing reasons, the Respondent's motion to dismiss the complaint is denied, and the Respondent's motion to dismiss, considered as a motion for summary judgment is granted. Judgment on this claim is entered for the State and against the Claimant.